UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY A. CHIVIS,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Case No. 4:04-CV-120
Hon. Gordon J. Quist

                                           /

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

       Plaintiff was born on May 19, 1948, graduated from high school and attended some college classes (AR 53, 95).[1] Plaintiff stated that he became disabled on August 29, 2001 (AR 53). Plaintiff had previous employment as an assembly operator, paint room operator, injection molder, inventory control clerk and hi-lo driver (AR 80, 105-06). He identified his disabling conditions as diabetes, hypertension, ulcers on left foot and neuropathy (AR 68). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and issued a decision on February 25, 2004 (AR 13-23). The ALJ found that plaintiff was under a disability "commencing May 18, 2003, but not prior to that date," and awarded plaintiff DIB

---

[1] Citations to the administrative record will be referenced as (AR "page #").

commencing May 18, 2003 (AR 23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim was granted in part and denied in part. The ALJ found that plaintiff was under a disability "commencing May 18, 2003 but not prior to that date" (AR 22-23). Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on August 29, 2001(AR 16, 22). Second, the ALJ found that he suffered from severe impairments of diabetes, diabetic retinopathy and peripheral neuropathy (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22).

### A.  Plaintiff's condition from August 29, 2001 to May 18, 2003

The ALJ decided at the fourth step that, from August 29, 2001 through May 18, 2003, plaintiff had the residual functional capacity to perform a range of light work, but that his:

> impairments preclude him from: lifting or carrying over 20 pounds at one time or more than 10 pounds frequently; using vibrating tools; working around unprotected heights or dangerous moving machinery; more than occasional use of bilateral foot controls; more than occasional balancing, [stooping,] kneeling[,] crouching, crawling, ramp or stair climbing; more than frequent bilateral upper extremity reaching, handling, or fingering; more than occasional bilateral upper extremity feeling; performing tasks requiring binocular vision or meaningful depth perception. The claimant requires a sit/stand option, and has the residual functional capacity for a range of light work.

(AR 21). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff was capable of performing the full range of light work (AR 22). Specifically, the ALJ found that an individual with plaintiff's limitations could perform 16,000 jobs in the State of Michigan, such as general office clerk, collator

4

operator and sorter/folder (AR 22). The ALJ also found plaintiff's allegations regarding his limitations were not totally credible during this time period (AR 21). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits from his alleged onset date of August 29, 2001 to May 18, 2003 (AR 22).

### B. Plaintiff's condition commencing May 18, 2003

The ALJ granted plaintiff benefits at step five of the sequential evaluation commencing May 18, 2003 (AR 23). In this regard, the ALJ found as follows:

> As of May 18, 2003, the claimant attained "advanced" age, and was disabled based on Grid Rule 202.06. Were it not for the presumption created by this rule, claimant would not be found disabled even at this time as he is able to perform a wide range of activities.

(AR 21).

## III. ANALYSIS

Plaintiff raises two broad issues on appeal. First, that the ALJ's denial of benefits from August 29, 2001 through May 18, 2003 "is contrary to substantial evidence on the whole record." Plaintiff's Brief at iv. Second, that "substantial evidence on the whole record directs a finding that [plaintiff] was under a disability not only from his 55th birthday, but too [sic] retroactively to August 29, 2001, and remains under such disability from all substantial gainful activity." *Id.* The court will address plaintiff's arguments set forth in support of these two general statements of error.

>    **A.  There does not exist adequate evidence to support the Commissioner's erroneous factual conclusion that [plaintiff] was not disabled within the meaning of the Social Security Act between August 29, 2001, and May 18, 2003.**

Plaintiff's argument consists of two sentences:

> The Commissioner committed factual error by concluding that Mr. Chivis, despite diabetes mellitus-related bilateral fingers [sic] numbness precluding other than occasional reaching/handling/fingering, was (before May 19, 2003) able to perform substantial gainful activity, specifically exertionally light collator, sorter/folder, and general office clerk work activities. Mr. Chivis, under peripheral neuropathy consistent with his advanced Type II diabetes mellitus, superimposed upon blindness in the left eye and milky vision in the right, reasonably could not have done vacuuming or made his bed and reasonably could not manipulate reams of paper (as a collator or office clerk), nor ensure that he properly folded laundry at a dry cleaner business.

Plaintiff's Brief at 7-8.

>    **1.  Manipulative limitations**

The ALJ acknowledged that plaintiff suffered from manipulative limitations, finding that he suffered from a severe impairment of peripheral neuropathy (AR 19). As an initial matter, plaintiff has misstated that ALJ's findings that prior to May 18, 2003 he could engage in only "occasional reaching/handling/fingering." Plaintiff's Brief at 7. Rather, the ALJ found that prior to May 18, 2003, plaintiff's impairments precluded him from "more than <u>frequent</u> bilateral upper extremity reaching, handling, or fingering" and "more than occasional bilateral upper extremity feeling" (AR 20-21) (emphasis added).

The ALJ's findings with respect to plaintiff's manipulative limitations are supported by the opinion of an examining physician, Joseph Jensen, D.O. Dr. Jensen concluded that plaintiff had "stocking glove neuropathy in the hands and feet," but found his motor strength and reflexes

were intact (AR 197). The doctor observed that plaintiff had no difficulty with orthopedic maneuvers, that his motor function was intact and that his "hands have full dexterity" (AR 196-97). The ALJ's determination is also consistent with the opinion expressed by a non-examining DDS physician, Robin Mika, D.O. (AR 203-10). Dr. Mika concluded that plaintiff had some manipulative restrictions, and was limited to frequent bilateral use of reaching, handling and fingering, and only occasional bilateral use of feeling (AR 206).

Plaintiff points to the statement of plaintiff's physician, Mehmet B. Ismailoglu, M.D. to support his contention that he cannot engage in any manipulative work. Plaintiff's Brief at 3. In a statement given in December 2003, Dr. Ismailoglu pointed out that plaintiff had sensory loss in his distal extremities due to his neuropathy and that he would be limited in performing repetitive manipulation (AR 255-56). However, the doctor's records do not include any work restrictions. Dr. Ismailoglu's general observations are not inconsistent with the specific limitations expressed by Drs. Jensen and Mika.

The ALJ could properly rely on the opinions expressed by Drs. Jensen and Mika. An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

### 2. Vision limitations

The ALJ also addressed plaintiff's vision problems, tracing his history of eye surgeries and his subjective complaints of milky right eye vision (AR 16-20). The ALJ acknowledged that plaintiff suffered from a severe impairment of diabetic retinopathy (AR 20). The ALJ addressed plaintiff's vision problems by precluding work that required "performing tasks requiring binocular vision or meaningful depth perception" (AR 21). The ALJ's finding is consistent with the opinions of both a treating physician and Dr. Mika. Plaintiff's treating opthalmologist, P. Jeffrey Colquhoun, M.D., opined in May 2003 that plaintiff's vision in the right eye would allow for a driving license but that "any occupation that would require good vision in both eyes and depth perception would not be allowed" (AR 231). Dr. Mika noted that plaintiff's blindness in the left eye and 20/50 vision in the right eye established visual limitations of near acuity, far acuity, depth perception, accommodation and field of vision (AR 206). Accordingly, substantial evidence in the record supports the ALJ's RFC determination regarding plaintiff's visual impairments.

### 3. Plaintiff's ability to perform jobs

Finally, the ALJ's decision that plaintiff can perform the collator, sorter/folder, and general office clerk work activities is supported by the vocational expert's (VE's) testimony. *See* discussion at § III. B., *infra*.

>   **B.    The vocational expert's testimony concerning Mr. Chivis's [sic] ability to perform a limited range of sedentary work activities (erroneously mislabeled by the ALJ as a limited range of light work activities) does not qualify as substantial evidence because it was evoked by the ALJ's inaccurate and incomplete hypothetical question.**
>
>   **1.    The ALJ did not "mislabel" plaintiff's physical exertional level as the ability to perform light work.**

The ALJ found that plaintiff had the RFC to perform light work and referenced the Grid Rule related to light work (AR 20-21). Plaintiff repeatedly contends that the ALJ's finding that plaintiff should have a sit/stand option is in actuality a finding that plaintiff can perform only sedentary work. Plaintiff's Brief at 1, 6, 8. The court rejects plaintiff's assertion that the ALJ "mislabeled" his maximum physical exertional level as "light work" rather than "sedentary work."[2]

The Sixth Circuit has rejected plaintiff's argument that a job involving a sit/stand option is

---

[2] "Sedentary work" is defined at 20 C.F.R. § 404.1567(a) as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

"Light work" is defined at 20 C.F.R. § 404.1567(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

9

"sedentary work." In *Hammond v. Apfel*, No. 99-145, 2000 WL 420680 at *4-5 (6th Cir. April 12, 2000), the court reviewed the definitions of light work and sedentary work, and then concluded that a limited range of light work could include jobs with a sit/stand option:

> Although the ALJ determined that Hammond could not perform the full range of light work jobs, the ALJ did find that Hammond could lift twenty pounds as provided under the light work category and that he could perform jobs in this category with a sit/stand option and no prolonged standing or sitting. Social Security Ruling 83-14 states only that most light jobs involve standing or walking most of the workday. <u>The ALJ was not required to conclude that Hammond could only perform sedentary jobs because he is unable to perform all light work jobs. The ALJ could identify jobs within the light work category that correlate to Hammond's particular limitations and abilities.</u> In fact, the VE was able to identify jobs in the light work category that correspond to Hammond's limitations. Within this category, the VE testified that Hammond would be able to perform the following jobs in the lower peninsula of Michigan: a limited range of inspector jobs (3,500), a limited range of machine operator jobs (5,400), assembly jobs (5,000), and a gate guard (10,500). Because Hammond is able to perform some light work jobs, the ALJ was not required to find that Hammond is limited to performing only sedentary jobs.

*Hammond*, 2000 WL 420680 at *5 (footnote omitted) (emphasis added). In the present case, the ALJ was able to identify light work jobs that plaintiff could perform with a sit/stand option. Accordingly, the ALJ properly classified plaintiff's RFC as light work and used the appropriate Grid Rule.

### 2.     Hypothetical question was not flawed

Plaintiff contends that the ALJ's hypothetical question posed to the vocational expert (VE) was inaccurate because there was no support for his "performance of frequent upper extremities-localized reaching/handling/fingering" and that his combination of impairments precluded the performance of any substantial gainful activity. Plaintiff's Brief at 8-9. The court disagrees. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the

plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ posed a hypothetical question to the vocational expert (VE) that included the following restrictions:

> The Claimant is considered to be a person of advanced age for the categories of the Social Security Regulations. Has a high school education. Does not have difficulties with communication. Assume such a person with the residual functional capacity to perform light work with no more than occasional bilateral foot controls, no ropes, ladders, or scaffolds. No more than occasional ramps or stairs, no more than occasional balancing, stooping, kneeling, crouching, or crawling. No more than frequent bilateral use of the upper extremities for reaching, handling, and fingering. And no more than occasional bilateral use of upper extremities for feeling. The visual limitations of basically blindness in the left eye, corrected to 20/20 in the right eye with corrective lenses. Should have no exposure to vibration, no hazardous moving machinery or unprotected heights. So we're looking at basically monocular vision, limited or somewhat limited depth perception according to Dr. Cohoun [sic], particularly where depth perception is not an issue.

(AR 300-01).

As previously discussed, the ALJ's restrictions regarding plaintiff's manipulative and vision impairments are supported by substantial evidence. In addition, the hypothetical question incorporated the combined effects of plaintiff's impairments, as illustrated by the VE's testimony. In response to this hypothetical question, the VE testified that (1) these limitations would rule out

11

all of plaintiff's past relevant work and (2) the depth perception limitation "would clearly rule out" driving and operating skills and "would create difficulties" with machine operations (AR 301-02). The VE testified that such limitations would allow semi-skilled inventory control positions (AR 302). In addition, the VE testified that none of plaintiff's skills would transfer to sedentary jobs (AR 303).

The ALJ then re-stated the hypothetical question (i.e., "looking at light work, unskilled basically, monocular vision, etc.") and asked if any jobs existed for such a person in the regional or national economy (AR 303). To this hypothetical question, the VE responded affirmatively, identifying 16,000 jobs in Michigan such as general office clerk, collator operator and sorter folder in laundry and dry cleaning industry (AR 303). The VE clarified that the collator operator was "a machine operation but it's just a button activated [sic] and usually [involves] just taking the papers, putting it in and then getting them off again" (AR 303).

Next, the ALJ added a sit/stand option, with "more sitting than standing" to the hypothetical question (AR 303-04). The VE testified that all of the identified jobs would be compatible with a sit/stand option (AR 304). Then, the VE added a final limitation that such a person "needed to have some kind of sunglasses or something to diminish the brightness of lights" (AR 304). The VE testified that such a limitation would not affect the ability of such a person to perform the identified jobs (AR 304).

Plaintiff's attorney directed the VE's attention to an additional limitation, being plaintiff's statement that he suffered "milkiness of his vision" (AR 305). The VE stated that if plaintiff suffered from "milkiness" of vision, such a restriction would not change his answer to the hypothetical question (AR 305). The VE clarified that in light of the fact that plaintiff still enjoys

reading, the milkiness of plaintiff's vision in his right eye would not preclude the three identified jobs (general office clerk, collator operator and sorter folder) (AR 306). Accordingly, the ALJ's hypothetical question accurately reflected plaintiff's limitations.

### C. Plaintiff's other claims for relief

Finally, plaintiff's brief includes extensive portions of his counsel's April 23, 2004, letter to the Appeals Council, suggesting that "Equal Access to Justice Act" sanctions should be imposed" for the Appeals Council's "inattentiveness" to this matter. Plaintiff's Brief at 9-10. Plaintiff's claim is without merit. Even if the Appeals Council was "inattentive" in handling plaintiff's claim, there is no basis for this court to review the Council's denial of his request for review. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Servs.*, No. 93-6337, 1995 WL 31591 at *2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S. 99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). "While new material evidence may be submitted for consideration to the appeals council pursuant to 20 C.F.R. § 404.970, on appeal we still review the ALJ's decision, not the denial of review by the appeals council." *Id.*

## IV. Recommendation

Accordingly, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: July 14, 2005         /s/ Hugh W. Brenneman, Jr.
                             Hugh W. Brenneman, Jr.
                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).